**In re GATLINBURG MOTEL ENTERPRISES, LTD. d/b/a Glenstone Lodge, Debtor.**

**John P. NEWTON, Jr., Trustee, Plaintiff,**

**v.**

**Marvin J. HERSKOWITZ, Trustee, Sevier County Bank, First American National Bank, and First National Bank of Oneida, Defendants.**

**Bankruptcy No. 3-87-00708. Adv. No. 3-89-0032.**

United States Bankruptcy Court, E.D. Tennessee.

May 19, 1989.

Gentry, Tipton, Kizer & Little, P.C., W. Morris Kizer, Knoxville, Tenn., for plaintiff.

Walker & Walker, P.C., John A. Walker, Jr., Knoxville, Tenn., for defendant, Marvin J. Herskowitz, trustee.

John H. Fowler, Sevierville, Tenn., for defendant, Sevier County Bank.

Bass, Berry & Sims, L. Wearen Hughes, Nashville, Tenn., for defendant, First American Nat. Bank.

Baker, Worthington, Crossley, Stansberry & Woolf, James A. McIntosh, Daniel J. Moore, Knoxville, Tenn., for defendant, First Nat. Bank of Oneida.

## MEMORANDUM ON DEFENDANT MARVIN J. HERSKOWITZ'S MOTION FOR SUMMARY JUDGMENT

RICHARD S. STAIR, Jr., Bankruptcy Judge.

The court has before it a motion for summary judgment filed March 10, 1989, by the defendant Marvin J. Herskowitz, Trustee (Herskowitz). The plaintiff and defendants Sevier County Bank, First American National Bank, and First National Bank of Oneida have filed responses in opposition to Herskowitz's Motion.

The Chapter 7 trustee, through his commencement of this adversary proceeding, seeks to avoid a deed of trust held by Herskowitz encumbering the debtor's leasehold interest in real property in Sevier County, Tennessee. Succinctly stated, the Herskowitz deed of trust, recorded May 10, 1983, contains no property description. Asserting alternative theories, the trustee contends that the deed of trust and certain payments made pursuant to the promissory note which it secures are avoidable pursuant to 11 U.S.C.A. §§ 544, 547, 548 and 549 (West 1979 & Supp. 1989). Additionally, the trustee seeks a determination that Herskowitz has no claim against the debtor and that he (the trustee) is entitled to an order requiring Herskowitz to turn over adequate protection payments made during the pendency of the debtor's Chapter 11 case.[1]

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(K) and (O) (West Supp.1989).

### I

The debtor, Gatlinburg Motel Enterprises, Ltd., a Tennessee limited partnership, was the owner-operator of the Glenstone Lodge, a motel located in the East Tennessee resort city of Gatlinburg. The debtor's principal asset is its leasehold interest in the real estate upon which it operated the Glenstone Lodge.

The debtor commenced its bankruptcy case March 23, 1987, upon the filing of a voluntary petition under Chapter 11 of title 11 of the United States Code. On January 12, 1989, upon its inability to obtain confirmation of a plan of reorganization, the debtor's Chapter 11 case was converted to Chapter 7 and the plaintiff, John P. Newton, Jr., was appointed interim trustee. The plaintiff has continued to operate the debtor's business pursuant to 11 U.S.C.A. § 721 (West 1979) upon order of the court entered January 13, 1989.

Throughout the pendency of the Chapter 11 case, the debtor and defendants operated under the premise that the debtor's leasehold estate was encumbered by three deeds of trust: a first deed of trust in favor of Home Federal Savings and Loan Association (Home Federal) securing an indebtedness approximating $2,600,000; the Herskowitz deed of trust securing an indebtedness approximating $3,400,000; and

---

1. The defendant, Sevier County Bank, holds a third deed of trust encumbering the debtor's leasehold estate. The remaining defendants, First American National Bank and First National Bank of Oneida, are participants in the note secured by the third deed of trust. Plaintiff seeks a determination that the estate's interest in the debtor's leasehold estate is superior to the third deed of trust.

a third deed of trust held by Sevier County Bank securing an indebtedness approximating $3,500,000.

On June 14, 1988, Herskowitz filed a Motion For Adequate Protection. This motion contains, inter alia, the following averments: "Herskowitz is the holder of a secured claim in this case" and "[t]he Herskowitz claim is secured by a second leasehold deed of trust on the debtor's leasehold interest." On July 13, 1988, immediately prior to a hearing on Herskowitz's motion, the debtor and Herskowitz announced in open court that they had reached an agreement. Pursuant to that agreement Herskowitz and the debtor tendered an order. This order, entered July 15, 1988, provides:

## ORDER FOR ADEQUATE PROTECTION

This contested matter came on to be heard before the Hon. Richard Stair, Jr., United States Bankruptcy Judge, on the 13th day of July, 1988, on the Motion for Adequate Protection filed by Marvin Herskowitz, Trustee on June 14, 1988, whereupon it was announced in open court by counsel for the movant and counsel for the debtor-in-possession that the matters in controversy between them had been resolved and agreed upon, subject to the approval of this Court.

Upon consideration of the terms of that agreement, the Court is of the opinion that, based upon the allegations in the aforesaid motion, the · agreement ought to be approved. It is accordingly ORDERED that the debtor-in-possession begin making monthly adequate protection payments to Marvin Herskowitz, Trustee in the amount of $33,813.90 each, beginning as of the payment due June 10, 1988, with the first payment due June 10, 1988 to be made on or before July 15, 1988, the second payment due July 10, 1988 to be made on or before July 25, 1988, and subsequent monthly payments of $33,813.90 to be made on the tenth day of August, 1988 and on the tenth day of each succeeding month

pending further orders of this Court. Entry of this order is without prejudice to the rights of each party to contest and litigate the amount of movant's claim and the valuation of the assets of the debtor-in-possession.

The order contains approval signatures of the attorneys for Herskowitz and the debtor, preceded by the following typewritten statement: "Agreed to and approved for entry[.]" Further discussion of this order and the procedures surrounding its entry will be discussed *infra*.

Subsequent to a two-day hearing on confirmation of the debtor's third amended plan held August 29 and 30, 1988, the debtor, on December 2, 1988, representing that it could not make those payments proposed under its plan, filed a "Report Of The Debtor And Motion To Dismiss." On the same date, Herskowitz and Home Federal filed a joint response in support of the debtor's dismissal motion. Additionally, Herskowitz and Home Federal, in their response, averred that conversion of the debtor's case to Chapter 7 would be inappropriate in that "all the Debtor's assets are subject to perfected security interests and liens which exceed the value of the collateral...." Based in part upon these representations, and upon representations by counsel for the debtor and Herskowitz at a hearing held December 21, 1988, that the debtor's leasehold estate was encumbered in excess of its value, the court entered an order dismissing the debtor's Chapter 11 case on December 28, 1988.

On December 30, 1988, Herskowitz filed a "Post–Dismissal Report," evidencing the existence of a potential defect in his deed of trust.[2] Also on December 30, 1988, the debtor filed a "Combined Motion To Alter Or Amend Judgment And Motion To Convert The Case To A Chapter 7 Case." On January 12, 1989, the court entered its order, accompanied by a Memorandum, amending its December 28, 1988 order of dismissal to provide for conversion of the debtor's Chapter 11 case to Chapter 7.

2. Counsel for Herskowitz informed the court orally on December 29, 1988, of this potential defect. The "Post–Dismissal Report" was filed at the court's direction.

## II

Herskowitz's motion for summary judgment is premised upon two contentions: the July 15, 1988 "Order For Adequate Protection" establishes him as the holder of a validly perfected and enforceable security interest in the debtor's leasehold estate; and this determination binds the plaintiff Chapter 7 trustee. Herskowitz's argument reposes upon the related doctrines of res judicata and collateral estoppel. He argues that his Motion For Adequate Protection averred the validity of his deed of trust; that the question of the deed's validity was necessarily placed at issue by his motion; and that the agreed "Order For Adequate Protection" constituted a resolution of a contested matter thus qualifying it as a judgment within the meaning of Rule 54(a) Fed.R.Civ.P., incorporated into Fed.R.Bankr.P. 7054.[3] Herskowitz further asserts that all classes of creditors were on notice of the filing of his adequate protection motion;[4] that all creditors, therefore, had an opportunity to attack the validity of his deed of trust; and that as no creditor raised any issue of invalidity, the rights of all parties, including the trustee, are now bound.

■ Notice of the hearing on Herskowitz's adequate protection motion was provided by the clerk to the debtor, debtor's attorneys, United States Trustee, Home Federal, Sevier County Bank, First American National Bank, and members of the nonfunctioning creditor's committee.[5] However, Herskowitz and the debtor, upon reaching their agreement concerning adequate protection, tendered to the court the proposed "Order For Adequate Protection" without complying with the provisions of Fed.R.Bankr.P. 4001(d).[6] Upon its entry, copies of the "Order For Adequate Protection" were mailed by the clerk to counsel for Herskowitz and the debtor. In the absence of compliance with Bankruptcy

---

3. Rule 54 Fed.R.Civ.P., provides in material part:

> Judgments; Costs
>
> (a) Definition; Form "Judgment" as used in these rules includes a decree and any order from which an appeal lies. A judgment shall not contain a recital of pleadings, ... or a record of prior proceedings.

The parties do not dispute that the Herskowitz adequate protection motion constituted a contested proceeding. Fed.R.Bankr.P. 9014 provides in material part:

> Contested Matters
>
> In a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion.... The motion shall be served in the manner provided for service of a summons and complaint by Rule 7004, and, unless the court otherwise directs, the following rules shall apply: ... 7054....

4. Herskowitz's argument on this point is in error. His Motion For Adequate Protection contains a certificate of service evidencing service only upon the debtor's attorney and United States Trustee. The motion further indicates that information copies were forwarded six attorneys, none of whom represented unsecured creditors.

5. A creditor's committee never functioned in the debtor's Chapter 11 case. On December 17, 1987, Herskowitz and Home Federal filed a "Motion For Appointment Of Committee Of Secured Creditors" averring that "[t]here is not presently an active, functioning committee of creditors holding unsecured claims." This motion was not granted.

6. Bankruptcy Rule 4001(d) provides in material part:

> (1) Motion; Service A motion for approval of an agreement to provide adequate protection, ... shall be served on any committee appointed under the Code or its authorized agent, or, if no committee has been appointed, on the creditors listed on the list filed pursuant to Rule 1007(d) and on such other entities as the court may direct. The motion shall be accompanied by a copy of the agreement.
>
> (2) Objection Notice of the motion and the time within which objections may be filed and served on the debtor in possession or trustee shall be mailed to the parties on whom service is required by paragraph (1) of this subdivision and to such other entities as the court may direct. Unless the court fixes a different time, objections may be filed within 15 days of the mailing of notice.
>
> (3) Disposition; Hearing If no objection is filed, the court may enter an order approving or disapproving the agreement without conducting a hearing. If an objection is filed or if the court determines a hearing is appropriate, the court shall hold a hearing on no less than five days' notice to the objector, the movant, the parties on whom service is required by paragraph (1) of this subdivision and such other entities as the court may direct.

Fed.R.Bankr.P. 4001.

Rule 4001(d), the court cannot and will not infer knowledge of the adequate protection agreement as memorialized in the "Order For Adequate Protection" on parties other than the debtor and Herskowitz.[7]

## III

■ The United States Supreme Court has enunciated conditions required for application of the doctrines of res judicata and collateral estoppel as follows:

A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a *"right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies...."* Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. Application of both doctrines is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions. To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.

*Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979) (emphasis added) (citations and footnote omitted). *See Marlene Industries Corp. v. N.L.R.B.,* 712 F.2d 1011, 1015–16 (6th Cir.1983); *Anchor Motor Freight, Inc.*

*v. International Brotherhood of Teamsters,* 700 F.2d 1067, 1069–70 (6th Cir.1983).

The Sixth Circuit has stated:

Res judicata bars a claim when (1) the same party or parties in privity with them were present in the prior litigation; (2) a court of competent jurisdiction has entered a valid, final judgment on the merits; and (3) the present action concerns the same subject matter or cause of action as the prior suit.

*Anchor Motor Freight, Inc.,* 700 F.2d at 1069–70 (*citing Sea-land Services, Inc. v. Gaudet,* 414 U.S. 573, 579, 94 S.Ct. 806, 812, 39 L.Ed.2d 9, *reh'g denied,* 415 U.S. 986, 94 S.Ct. 1582, 39 L.Ed.2d 883 (1974)).

Res judicata requires a final judgment on the merits before a party or its privy is precluded from raising an issue that was or could have been raised in the initial proceeding. The United States Court of Appeals for the Sixth Circuit has stated:

A final judgment is one which disposes of the whole subject, gives all the relief that was contemplated, provides with reasonable completeness for giving effect to the judgment and leaves nothing to be done in the cause save superintend, ministerially, the execution of the decree.

*City of Louisa v. Levi,* 140 F.2d 512, 514 (6th Cir.1944); *accord United States v. Western Electric Co., Inc.,* 777 F.2d 23 (D.C.Cir.1985).

The United States Court of Appeals for the First Circuit explored the concept of finality in the bankruptcy setting. *In re Saco Local Development Corp.,* 711 F.2d 441 (1st Cir.1983). Finding that the order in dispute was final, the court first reviewed the doctrine of finality as it has developed in nonbankruptcy litigation:

Were this not a bankruptcy case, we doubt that the kind of order before us would be considered "final." Traditionally, every civil action in a federal court has been viewed as a "single judicial unit," from which only one appeal would lie. Ordinarily, putting aside the effect

---

7. In response to a query from the court during oral argument on Herskowitz's summary judgment motion, Herskowitz's attorney argued that all parties in interest had actual knowledge of the adequate protection agreement. There is nothing in the record before the court to support this contention.

of Fed.R.Civ.P. 54(b), an action remains a "single judicial unit" even when it contains multiple claims and multiple parties. As a result, an order that effectively disposes of a claim by one plaintiff against one defendant normally, although not invariably, is regarded as interlocutory as long as the other claims remain unsettled.

Moreover, because of the "single judicial unit" rule, orders in nonbankruptcy cases that recognized one plaintiff's claim without resolving other plaintiffs' claims have been treated as interlocutory whenever the amount of the first plaintiff's recovery depended on the size of the remaining plaintiffs' damages.

. . . .

Although Congress has defined appellate bankruptcy jurisdiction in terms ("final judgment, order or decree") similar to those appearing in other jurisdictional statutes, *see, e.g.,* 28 U.S.C. §§ 1257, 1291, the history of prior federal bankruptcy law and the 1978 Act convinces us that Congress did not intend the word "final" here to have the same meaning—at least not with respect to the application of the traditional "single judicial unit" rule.

More significantly for present purposes, Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of *discrete disputes within the larger case*—and in particular, it has long provided that orders finally settling creditors' claims are separately appealable. (emphasis in original).

. . . .

In sum, given a longstanding Congressional policy of appealability, an uninterrupted tradition of judicial interpretation in which courts have viewed a "proceeding" within a bankruptcy case as the relevant, "judicial unit" for purposes of finality, and a legislative history that is consistent with this tradition, we conclude that a "final judgment, order, or decree" ... includes an order *that con-*

*clusively determines a separable dispute* over a creditor's claim or priority. (emphasis added).

*In re Saco Local Development Corp.,* 711 F.2d at 443-46 (citations omitted); *See also Moody v. Empire Life Ins. Co. (In re Moody),* 849 F.2d 902, 904 (5th Cir.1988) (Bankruptcy court's order determined final as it ended "a discrete unit in the larger case," quoting *Smith v. Revie (In re Moody),* 817 F.2d 365, 368 (5th Cir.1987), *cert. denied,* — U.S. ——, 109 S.Ct. 493, 102 L.Ed.2d 530); *Bowers v. Connecticut National Bank,* 847 F.2d 1019 (2nd Cir. 1988); *In re Beker Industries Corporation,* 89 B.R. 336 (S.D.N.Y.1988).

More straightforward is the pronouncement of the rule by the United States Court of Appeals for the Seventh Circuit in *Reichman v. United States Fire Ins. Co. (In re Kilgos),* 811 F.2d 1112, 1116 (7th Cir.1987), in which the court states that a decision in a bankruptcy case is final "when it wraps up a piece of litigation that would have been a stand-alone suit outside of bankruptcy law."

The United States District Court for the Eastern District of Tennessee recently noted that the bankruptcy court's denial of a request for a jury trial was not a final order because it "did not conclusively determine any controversy, and the defendants have not shown that they will be caused any serious harm by delaying the appeal." *Anderson v. DuVoisin (In re Southern Industrial Banking Corp.),* 70 B.R. 196, 199 (E.D.Tenn.1986).

The July 15, 1988 "Order For Adequate Protection" amounted to this court's approval of an agreement between the debtor and Herskowitz. Clearly, this order does not represent a determination on the merits following litigation on issues tried fully and fairly. The agreed "Order For Adequate Protection" on its face leaves open for future resolution several issues essential to a disposition on the merits of the adequate protection issue raised by Herskowitz in his June 14, 1988 motion. Herskowitz's motion provides in material part:

7. The market value of the leasehold is $6,885,000....

8. The value of Herskowitz's collateral exceeds the amount of his claim by only $306,704.60. . . .

9. The amount of this meager equity cushion declines daily, since the interest on the Home Federal Mortgage and the interest on the Herskowitz mortgage continue to accrue. Attorney fees also continue to accrue, as do accounting fees.

10. There is thus not a meaningful or significant "equity cushion" to protect the Herskowitz claim and Herskowitz is accordingly entitled to adequate protection within the meaning of 11 U.S.C. § 363(e).[8]

11. Herskowitz accordingly requests the Court to provide him adequate protection by ordering the debtor-in-possession immediately to make payments to him in an amount not less than the amount of the current monthly payment set out in the note secured by the Herskowitz Mortgage, to-wit, $33,813.90.

*Motion Of Marvin Herskowitz, Trustee, For Adequate Protection,* at pp. 2–3.

The central issue raised by Herskowitz in his adequate protection motion was the value of Herskowitz's collateral, i.e., the debtor's leasehold estate. Herskowitz averred his posture to be that of an oversecured creditor, whose position was eroding due to a diminution of his equity cushion. Essential to a determination of whether the debtor was required to provide Herskowitz adequate protection was not only a determination of the validity of Herskowitz's deed of trust, as is suggested by Herskowitz, but also the amount of Herskowitz's claim, the value of the debtor's leasehold estate, the depreciating or appreciating nature of Herskowitz's collateral, and the degree of erosion, if any, of Herskowitz's equity cushion.

The "Order For Adequate Protection" provides that it is entered "without prejudice to the rights of each party to contest and litigate the amount of [Herskowitz's] claim and the valuation of the assets of the debtor-in-possession." Herskowitz and the debtor specifically reserved for future litigation two issues essential for a determination on the merits of Herskowitz's entitlement to adequate protection: (1) the amount of Herskowitz's claim; and (2) the value of Herskowitz's collateral. In effect the "Order For Adequate Protection" does nothing more than require the debtor to resume those monthly payments required under the terms of the note alleged to be secured by the Herskowitz deed of trust. There was no finding by the court of a requirement of adequate protection following litigation on issues generally raised in adequate protection proceedings. Further, the parties, through their agreement, did not purport to resolve the usual issues essential to a requirement of adequate protection. The conditions necessary to the existence of a final order are simply not present. *In re Saco Local Development,* 711 F.2d 441; *In re Southern Industrial Banking Corp.,* 70 B.R. 196.

Based upon the record before the court, it is apparent that the payments the debtor was required to make pursuant to the "Order For Adequate Protection," $33,813.90 per month, have little if any relationship to the adequate protection, if any, which the debtor was required to provide Herskowitz.

A leading treatise on federal practice and procedure has observed:

Consent judgments entered upon settlement by the parties may assume forms that range from simple orders of dismissal with or without prejudice to detailed decrees. Whatever form is taken, the central characteristic is that the court has not actually resolved the substance of the issues presented. . . . However close the examination may be, the fact remains that it does not involve contest or decision on the merits. Instead, the judgment results from a basically contractual agreement of the parties. It can be entered only if the parties have in

---

**8.** Bankruptcy Code § 363(e) provides:

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C.A. § 363(e) (West Supp.1989).

fact agreed to entry, it is to be enforced in accord with the intent of the parties, and it can be vacated according to basically contractual principles of fraud, ignorance, mistake, or mutual breach.

18 Wright, Miller & Cooper, *Federal Practice and Procedure*, § 4443, p. 383 (West 1981) (footnotes omitted).

The intent of Herskowitz and the debtor as manifested by the "Order For Adequate Protection" is evidenced by at least two factors: (1) the clear and unambiguous language of the order as to its entry "without prejudice" to litigate in the future those issues relating to the amount of Herskowitz's claim and the value of the debtor's leasehold estate; and (2) the failure of the order to resolve these issues essential to a requirement of adequate protection, i.e., collateral value, equity, and validity of the Herskowitz deed of trust. Herskowitz and the debtor agreed to resolve Herskowitz's adequate protection motion short of a hearing. Thus, issues of collateral value, equity, and the validity of Herskowitz's deed of trust were never before the court nor were they addressed by the parties in their agreement as set forth in the "Agreed Order For Adequate Protection."

Therefore, the July 15, 1988 "Order For Adequate Protection" is not entitled to res judicata effect as between the debtor and plaintiff trustee on any issue ostensibly raised by Herskowitz's motion for adequate protection including, the issue of the validity of Herskowitz's deed of trust.

### IV

■ Judge Keith Lundin in *Pollack v. Federal Deposit Insurance Corp. (In re Monument Record Corp.)*, 71 B.R. 853 (Bankr.M.D.Tenn.1987), recently stated:

Collateral estoppel affects issues actually and necessarily determined by the prior judgment. "Actually and necessarily determined" may consist of judicial resolution of underlying facts which constitute or give rise to causes of action.

Where the prior judgment is by consent, intent of the parties is important.

71 B.R. at 864 (citations omitted).

Applying principles enunciated in *Spilman v. Harley*, 656 F.2d 224 (6th Cir.1981), this court, speaking through Judge Clive Bare, has noted:

Under the doctrine of collateral estoppel, estoppel by judgment, or issue preclusion, a judgment on the merits in a prior law suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action in [a] later suit between the same parties, though the later suit involves a different cause of action. Three elements must be present for the prior judgment to have collateral estoppel effect: (1) the precise issue sought to be precluded was raised in the prior proceeding; (2) the issue was actually litigated; and (3) the determination of the issue in the prior action was necessary and essential to the outcome.

*Hardin v. Caldwell (In re Caldwell)*, 60 B.R. 214, 218 (Bankr.E.D.Tenn.1986) (citations omitted).

In *Spilman*, the Sixth Circuit reversed the judgment of the district court affirming a bankruptcy court decision applying the doctrine of collateral estoppel on the basis of a record before it consisting solely of the state court judgment.[9] The Sixth Circuit held:

Collateral estoppel requires that the precise issue in the later proceedings have been raised in the prior proceeding, that the issue was actually litigated, and that the determination was necessary to the outcome.

. . . .

Thus, before applying the doctrine of collateral estoppel, the . . . court must determine if the issue was actually litigated and was necessary to the decision. . . . To do this, the . . . court should look at the entire record [and] . . . not just the judgment. . . .

---

**9.** Notwithstanding that *Spilman* deals with the collateral estoppel effect of a state court judgment in the bankruptcy court, its principles are equally applicable to judgments entered within the same forum. *In re Monument Record Corp.*, 71 B.R. 853 (Bankr.M.D.Tenn.1987).

. . . .

If the . . . record does not show the issue is necessarily actually litigated in the prior . . . proceeding, collateral estoppel is inapplicable.

*Spilman,* 656 F.2d at 228–29 (citations omitted).

In reversing the judgment of the district court, the Sixth Circuit remanded the case with directions "to determine by looking at the entire . . . record if the issue . . . was actually litigated and . . . necessary to the . . . decision." *Spilman,* 656 F.2d at 229.

In the case sub judice, there is no record in support of the "Order For Adequate Protection" through which Herskowitz asserts application of the doctrine of collateral estoppel. The order merely purports to embody an agreement between the debtor and Herskowitz relative to the debtor's providing payments of $33,813.90 per month without prejudice to the rights of the parties to subsequently litigate the amount of Herskowitz's claim and the value of his collateral. The issue of the validity of Herskowitz's deed of trust was not litigated nor did the parties address that issue with specificity in the July 15, 1988 adequate protection order. Therefore, collateral estoppel does not act to preclude the trustee from challenging the validity of Herskowitz's deed of trust in the instant adversary proceeding.

Herskowitz, in support of his motion for summary judgment, relies in part upon Judge Lundin's decision in *In re Monument Record Corp.* The plaintiff devotes considerable effort in his responsive brief distinguishing *In re Monument Record Corp.* from the facts confronting the court in the instant proceeding.

*In re Monument Record Corp.* involved a creditor, the Federal Deposit Insurance Corporation (FDIC), who filed a motion for relief from the automatic stay. *In re Monument Record Corp.,* 71 B.R. at 855. In connection with the automatic stay proceeding, the bankruptcy court entered a consent order, approved by attorneys for the debtor, FDIC, and creditors' committee, validating the FDIC's security interest in certain collateral and granting the FDIC relief from the stay.[10] The agreed order contained a provision that copies of the order were to be served on all creditors and that the order would become final if no objection and request for a hearing was filed within ten days.[11] *In re Monument Record Corp.,* 71 B.R. at 855. No objections were filed. A trustee was subsequently appointed upon motion of the creditors' committee. The trustee filed an adversary proceeding averring that the FDIC's interest in the collateral was unperfected at the time the debtor filed its bankruptcy case and was thus avoidable as a preference or fraudulent transfer under Bankruptcy Code §§ 547 and 548, respectively. *Id.* at 856. Judge Lundin, in a comprehensive opinion, held: (1) the order terminating the automatic stay, in recognizing that the FDIC had a valid security interest, constituted a "final order" for issue preclusion purposes; (2) that the debtor-in-possession and creditors' committee stood in "privity" with the Chapter 11 trustee; and (3) that the order terminating the automatic stay "actually and necessarily determined" whether the FDIC's security interest was perfected at the time of filing so as to collaterally estop the trustee from relitigating the perfection issue.

---

10. More specifically, the agreed order provided in material part: "Said . . . indebtedness is secured by a valid first lien security interest in the . . . collateral and proceeds derived therefrom. . . ." *Id.* at 855.

11. Bankruptcy Rule 4001(d), effective August 1, 1987, quoted *supra* at n. 6, was not in place during the pendency of this proceeding. Judge Lundin in his opinion notes that the provision of the agreed order giving creditors an opportunity to object was pursuant to Bankruptcy Rule 9019 which provides:

Compromise and Arbitration
(a) Compromise
On motion by the trustee and after a hearing on notice to creditors, the debtor and indentured trustees as provided in Rule 2002(a) and to such other entities as the court may designate, the court may approve a compromise or settlement.
Fed.R.Bankr.P. 9019 (unchanged by 1987 Amendments).

The circumstances confronting this court relating to the entry of the July 15, 1988 "Order For Adequate Protection" and those confronting Judge Lundin in *In re Monument Record Corp.* are inapposite. *In re Monument Record Corp.* is not authority in the case sub judice for giving res judicata or collateral estoppel effect to the July 15, 1988 "Order For Adequate Protection."

V

Neither res judicata or collateral estoppel bar the plaintiff Chapter 7 trustee from litigating the validity of the Herskowitz deed of trust in the instant adversary proceeding. The July 15, 1988 "Order For Adequate Protection" does not constitute a final judgment on the merits on the issues presented by Herskowitz in his June 14, 1988 motion for adequate protection.

An appropriate order denying Herskowitz's motion for summary judgment will be entered.