**In re VISIDATA CORPORATION, Debtor.**

**John M. ENGLAND, Trustee, Plaintiff,**

**v.**

**FORTUNE SYSTEMS CORPORATION, and Frederick Fowler, Defendants.**

**Bankruptcy No. 3–85–01512–E–LK. Adv. No. 3–86–0152–JR.**

United States Bankruptcy Court, N.D. California.

Feb. 26, 1988.

As Modified March 8, 1988.

Denise Olrich, Stokes, Welch & Stromsheim, San Francisco, Cal., for plaintiff John M. England (Trustee).

John T. Hansen, Law Offices of John T. Hansen, San Francisco, Cal., for defendants Fortune Systems Corp. and Frederick Fowler.

## OPINION

THOMAS E. CARLSON, Bankruptcy Judge.

The principal question presented is whether a right to jury trial exists in an action by a trustee to recover a preference from a creditor that has not filed a claim against the estate. I conclude that no right to jury trial exists, because a preference action is a federal statutory action that Congress has provided shall be adjudicated in a specialized court of equity—the bankruptcy court. A secondary question is whether a right to jury trial exists in an action by the Trustee under the California bulk transfer statute. I conclude that no right to jury trial exists, because the sole issue remaining to be tried in the bulk transfer action is also an issue in the preference action. That issue may be determined for all purposes in the preference action without a jury.

## FACTS

At all times relevant here, Fortune Systems Corporation (Fortune Systems) was engaged in the manufacturing and selling of micro computers. Debtor Visidata Corporation (Visidata) was also engaged in the manufacture of computer hardware and software. In August 1984, these two parties entered into a contract under which Visidata would manufacture computer terminals for Fortune Systems.

On February 15, 1985, Fortune Systems loaned $363,000 to Visidata. The loan was to be repaid within 90 days. The promissory note evidencing the loan provided that Fortune Systems could, at its discretion, offset amounts due to Visidata for terminals shipped to Fortune Systems against the amount Visidata owed on the note. The promissory note was guaranteed by Defendant Frederick Fowler, president of

Visidata. Visidata shipped several hundred terminals to Fortune Systems between February 15 and April 19, 1985. Visidata sent invoices to Fortune Systems regarding these deliveries and Fortune Systems remitted approximately $360,199 to Visidata in payment of those invoices.

Fortune Systems became dissatisfied with the quality of the computer terminals manufactured by Visidata, and decided it could produce better terminals itself. Consequently, on April 19, 1985, Fortune Systems agreed to purchase from Visidata all the inventory, equipment, and intangible rights related to the manufacture of the computer terminals. The written contract acknowledged that Visidata still owed Fortune Systems the full $363,000 on the February 12, 1985 promissory note, and credited that amount against the purchase price of $1,508,000. No notice of the transfer to Fortune Systems was given under the California bulk transfer law.

Visidata filed a petition under Chapter 7 of the Bankruptcy Code on July 8, 1985. The bankruptcy trustee (Trustee) filed the present action seeking to avoid the April 1985 transfer of Visidata's inventory, equipment, and intangible rights, on the ground that the transfer constituted a preference under section 547 of the Bankruptcy Code, and on the ground that the transfer violated the California bulk transfer law (Cal.Comm.Code § 6101 *et seq.*) The Trustee also alleged that the transfer constituted a preferential transfer to Fowler, because it effected a release of his guarantee of the February 15, 1985 promissory note of Visidata. Because Fortune Systems had sold all the property in question to SCI Technology, Inc. before the complaint was filed, the Trustee sought the monetary value of the property transferred rather than return of the property itself.

The parties filed cross motions for summary judgment. The court granted complete summary judgment in favor of Defendant Fowler, but denied the motion of Defendant Fortune Systems. The court granted partial summary judgment in favor of the Plaintiff Trustee against Defendant

Fortune Systems on both the preference action and the bulk transfer action. With respect to the preference claim, the court held that all of the elements of a preference save one had been established. The court held that there existed genuine issues of material fact as to whether Fortune Systems received more than it would have in a Chapter 7 liquidation, and as to the value of the property transferred. The court also held that all of Fortune Systems' affirmative defenses to the preference action were invalid. With respect to the bulk transfer action, the court held that the transfer of tangible property violated the bulk transfer law, but that the transfer of the intangible property was not subject to the statute. The only factual issue to be resolved with respect to the bulk transfer action is the value of the property transferred.

DISCUSSION

I

■■■ Whether a right[†] to jury trial exists in an action to recover a preference under 11 U.S.C. § 547 where the defendant-creditor has not previously filed a claim against the bankrupty estate is a question of considerable importance and one on which the courts have disagreed.[1] There are no published decisions on point in this district or by the Ninth Circuit Court of Appeals.[2] Other courts are divided on the issue.[3]

There is no statutory right to a jury trial in a preference action. Section 1411(a) of the United States Judicial Code provides in relevant part:

[T]his chapter and Title 11 do not affect any right to trial by jury that an individual has under applicable bankruptcy law with regard to a personal injury or wrongful death claim.

The courts have uniformly interpreted this section as embodying Congress' determination not to accord the right to jury trial in bankruptcy proceedings other than personal injury and wrongful death claims. *See In re Clark*, 75 B.R. 337, 339 (N.D.Ala. 1987); *In re Hendon Pools of Michigan, Inc.*, 57 B.R. 801, 802 (E.D.Mich.1986); *In re Tureaud*, 70 B.R. 818, 822, 15 BCD 853 (Bankr.N.D.Okl.1987); *In re American Energy, Inc.*, 50 B.R. 175, 180, 13 BCD 200 (Bankr.D.N.D.1985); *In re O'Bannon*, 49 B.R. 763, 768, 13 BCD 49, 51–53 (Bankr.M. D.La.1985).

---

**1.** As explained in Part III, the Supreme Court has held that there is no right to jury trial in a preference action filed against a creditor who has filed a claim against the bankruptcy estate. *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966).

**2.** In the case of *In re Gaildeen Industries, Inc.*, 59 B.R. 402 (N.D.Cal.1986), the parties had stipulated that a right to jury trial existed in the preference action at issue. *Id.* at 403. The court commented that this stipulation was "consistent with the case law." *Id.* at 403 n. 1. The court's comment is clearly dictum, however, because the only question before the court was whether the bankruptcy court or the district court should conduct the trial.

**3.** The following decisions have held that a right to jury trial exists in preference actions:

*T.O.S. Industries, Inc. v. Ross Hill Controls Corp.*, 72 B.R. 749 (S.D.Tex.1987); *In re Kenval Marketing Corp.*, 65 B.R. 548, 550–55 (E.D.Pa. 1986); *In re Arnett Oil, Inc.*, 44 B.R. 603 (N.D. Ind.1984); *In re Adams, Browning & Bates, Ltd.*, 70 B.R. 490, 15 BCD 892 (Bankr.E.D.N.Y.1987); *In re McCrary's Farm Supply Inc.*, 57 B.R. 423 (Bankr.E.D.Ark.1985); *In re Boss–Linco Lines,* *Inc.*, 55 B.R. 299, 306–08 (Bankr.W.D.N.Y.1985); *In re Paula Saker & Co., Inc.*, 37 B.R. 802 (Bankr.S.D.N.Y.1984); *In re Portage Associates, Inc.*, 16 B.R. 445 (Bankr.N.D.Ohio 1982).

The following decisions have held that no right to jury trial exists in preference actions: *In re Southern Industrial Banking Corp.*, 70 B.R. 196, 201–02 (E.D.Tenn.1986); *In re Harbour*, 59 B.R. 319, 324–26, 14 BCD 575 (W.D.Va. 1986); *In re Country Junction, Inc.*, 41 B.R. 425 (W.D.Tex.1984); *In re Republic Financial Corp.*, 77 B.R. 840 (Bankr.N.D.Okla.1987); *In re Newman Companies, Inc.*, 76 B.R. 135 (Bankr.E.D. Wis.1987); *In re Major Tire Co.*, 64 B.R. 305 (Bankr.N.D.Ga.1986); *In re Reda, Inc.*, 60 B.R. 178, 179–82, 14 BCD 462 (Bankr.N.D.Ill.1986); *In re Hendon Pools of Michigan, Inc.*, 57 B.R. 801, 802–03 (E.D.Mich.1986); *In re Atlantic Energy, Inc.*, 52 B.R. 17 (Bankr.S.D.Fla.1985); *In re Best Pack Seafood, Inc.*, 45 B.R. 194 (Bankr.D. Me.1984); *In re Carriero*, 21 B.R. 132 (Bankr.D. Mass.1982); *In re Otis*, 13 B.R. 279 (Bankr.N.D. Ga.1981); *Cf. In re Atlas Fire Apparatus, Inc.*, 56 B.R. 927, 935, 13 BCD 1304 (Bankr.E.D.N.C. 1986) (no right to jury trial in any core proceeding); *In re Lee*, 50 B.R. 683, 684, 13 BCD 215 (Bankr.D.Md.1985) (same); *In re Baldwin–United Corp.*, 48 B.R. 49 (Bankr.S.D.Ohio 1985) (same).

That there is no statutory right to jury trial does not end the inquiry, however, because it is well established that the parties to bankruptcy proceedings may not be deprived of any right to jury trial guaranteed by the Constitution. Thus, in determining whether a right to jury trial exists in a particular type of bankruptcy proceeding, one examines the traditional factors for determining whether there is a right to jury trial in civil proceedings—whether proceedings of that type were traditionally tried to a jury before the merger of law and equity, the nature of the remedy sought, and the practical limitations on the abilities of juries. *See e.g., American Universal Ins. Co. v. Pugh,* 821 F.2d 1352, 1355 (9th Cir.1987); *In re Lombard–Wall, Inc.,* 48 B.R. 986, 993, 13 BCD 236 (S.D.N.Y.1985); *In re Dunoco Corp.,* 56 B.R. 137, 139 (Bankr.C.D.Cal.1985); *Hauytin v. Grynberg,* 52 B.R. 657, 660–61, 13 BCD 632 (Bankr.D.Colo.1985).

The parties would enjoy the right to a jury trial in a preference action if Congress had not provided that such actions be tried in bankruptcy court. *Schoenthal v. Irving Trust Co.,* 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932). *Schoenthal* was decided at a time when preference actions were "plenary" proceedings that generally could not be tried in the bankruptcy court. *Id.* at 95, 53 S.Ct. at 51. Applying the traditional test, the Court concluded that a right to jury trial existed, because preference actions generally seek recovery of money and because the action was recognized at common law in the courts of Westminster in 1789. *Id.* at 94, 53 S.Ct. at 51.

As explained below, however, the Supreme Court has also held that Congress may commit the adjudication of a Congressionally created civil cause of action to an administrative agency or a specialized court of equity, where the action may be tried without a jury. A bankruptcy trustee's right to recover preferences is a right created by federal statute. *See* 11 U.S.C. § 547. As noted above, when the Supreme Court decided *Schoenthal,* Congress had not provided that preference actions should generally be tried in the bankruptcy courts. *See Schoenthal,* 287 U.S. at 95, 53 S.Ct. at 51. Through the Bankruptcy Reform Act of 1978 and subsequent amendments, however, Congress has accorded the bankruptcy courts power to hear and enter final judgments in all preference actions. *See* 28 U.S.C. §§ 1334(b), 157(b)(1)–(b)(2)(F). I therefore conclude that *Schoenthal* is inapplicable in the current statutory framework, and that all preference actions may be tried without a jury.[4]

II

The Supreme Court has held that Congress may require that a federal statutory cause of action be tried by an administrative agency or specialized court of equity, in which no right to jury trial is afforded, even if the action is one in which the parties would enjoy a right to jury trial if the action were tried in a general civil court. *See Atlas Roofing Co., Inc. v. Occupational Safety and Health Review Comm'n,* 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977) (civil penalties for unsafe working conditions); *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 48–49, 57 S.Ct. 615, 629–630, 81 L.Ed. 893 (1937) (NLRB proceedings re back pay awards); *Block v. Hirsh,* 256 U.S. 135, 158, 41 S.Ct. 458, 460, 65 L.Ed. 865 (1921) (landlord-tenant disputes under federal rent control act). *See also Pernell v. Southall Realty,* 416 U.S. 363, 383, 94 S.Ct. 1723, 1733, 40 L.Ed.2d 198 (1974) (dictum); *Curtis v. Loether,* 415 U.S. 189, 194–95, 94 S.Ct. 1005, 1008–09, 39 L.Ed.2d 260 (1974) (dictum).

In so holding, the Court relied heavily on the principle that Congress has substantial discretion, when creating a substantive

---

4. The Trustee also contends that no right to jury trial exists because the action is equitable in character. This is so the Trustee contends, because Fortune Systems received property other than money, and the Trustee seeks a money recovery only as an alternative to return of the specific property transferred. *See In re Kenval Marketing Corp.,* 65 B.R. 548 (E.D.Pa.1986); *In re Newman Companies, Inc.,* 76 B.R. 135 (Bankr.E.D.Wis.1987); *In re Dunoco Corp.,* 56 B.R. 137 (Bankr.C.D.Cal.1985). I need not address this theory, as I conclude that there is no right to jury trial in a preference action seeking any type of recovery.

right, to specify how that right shall be adjudicated. Thus, the Court stated in *Block v. Hirsh:*

> The statute is objected to on the further ground that landlords and tenants are deprived by it of a trial by jury on the right to possession of the land. If the power of the Commission established by the statute to regulate the relation is established, as we think it is, by what we have said, this objection amounts to little. To regulate the relation and to decide the facts affecting it are hardly separable.... A part of the exigency is to secure a speedy and summary administration of the law and we are not prepared to say that the suspension of ordinary remedies was not a reasonable provision of a statute reasonable in its aim and intent.[5]

256 U.S. at 158, 41 S.Ct. at 460. The Court also acknowledged that Congress must be allowed considerable flexibility to devise remedies suitable to the legislative purpose to be achieved.

> We cannot conclude that the [Seventh] Amendment rendered Congress powerless—when it concluded that remedies available in courts of law were inadequate to cope with a problem within Congress' power to regulate—to create new public rights and remedies by statute and commit their enforcement, if it chose, to a tribunal other than a court of law—such as an administrative agency—in which facts are not found by juries.

*Atlas Roofing,* 430 U.S. at 460, 97 S.Ct. at 1271.

 In contrast, Congress cannot eliminate the right to jury trial in actions that it permits to be tried in general civil courts, even where the cause of action is of Congress' own creation. *See Tull v. United States,* — U.S. —, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987); *Pernell v. Southall Realty,* 416 U.S. 363, 383, 94 S.Ct. 1723, 1733, 40 L.Ed.2d 198 (1974). Thus, whether Congress may eliminate the right to jury trial in a federal statutory civil action depends upon the tribunal in which the action is to be tried.

### III

The Supreme Court has also held that bankruptcy courts are specialized courts of equity and, in keeping with the decisions cited above, that no right to a jury trial exists in a preference action that is properly tried in the bankruptcy court. *See Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *Atlas Roofing,* 430 U.S. at 454 n. 11, 97 S.Ct. at 1268 n. 11.

In *Katchen,* the trustee filed a preference action in the bankruptcy court against a creditor that had previously filed a claim against the bankruptcy estate. Under the law in effect at that time, preference actions were considered "plenary" proceedings over which bankruptcy courts generally did not have jurisdiction. *Id.* at 327–28, 86 S.Ct. at 471–72. The Court concluded that the bankruptcy court could try the preference action in *Katchen,* however, because the bankruptcy court did have jurisdiction to try the creditor's claim and the court had to try the preference action to determine whether the claim should be allowed. It was necessary to try the preference action to determine the creditor's claim, because the Bankruptcy Act provided that the claim of a creditor who had received a preference must be disallowed until the creditor returned the preferential transfer. *Id.* at 330, 86 S.Ct. at 473.

The Court noted that the parties enjoyed no right to jury trial in the proceeding to determine the creditor's claim, because bankruptcy law "converts the creditor's legal claim into an equitable claim to a pro rata share of the *res* " [the bankruptcy estate]. *Id.* at 336, 86 S.Ct. at 476. The Court acknowledged that the preference action was not equitable in nature and that

---

5. Congress relied upon this same principle in determining that preference actions may properly be classified as core proceedings in which bankruptcy judges may enter final judgments subject only to traditional appellate review. *See* 130 Cong.Rec. E1109 (daily ed. March 20, 1984)

(statement of Rep. Kastenmeier). *See also Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 81–84, 102 S.Ct. 2858, 2876–78, 73 L.Ed.2d 598 (1982); *In re Mankin,* 823 F.2d 1296, 1308 (9th Cir.1987).

the parties would ordinarily enjoy the right to jury trial, citing *Schoenthal.* The Court further acknowledged that the right to jury trial would have been preserved with respect to the issues related to the preference action, even when tried as part of the claim against the estate, had the proceeding been conducted in a general civil court. "[W]here both legal and equitable issues are presented in a single case, 'only under the most imperative circumstances, . . . can the right to a jury trial of legal issues be lost through prior determination of equitable claims.'" *Id.* at 338, 86 S.Ct. at 477 (quoting *Dairy Queen v. Wood,* 369 U.S. 469, 472–73, 82 S.Ct. 894, 897, 8 L.Ed.2d 44 (1962)).

The Court declined to apply the *Dairy Queen* doctrine to proceedings in the bankruptcy court, however, and held that no right to jury trial existed in the preference action when it was tried in the bankruptcy court. The Court had earlier noted the importance of the policy that proceedings in the bankruptcy court be adjudicated promptly and inexpensively.

> When Congress enacted general revisions of the bankruptcy laws in 1898 and 1938, it gave "special attention to the subject of making [the bankruptcy laws] inexpensive in [their] administration." [Citations Omitted]. Moreover, this Court has long recognized that a chief purpose of the bankruptcy laws is "to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period," *Ex parte Christy,* 3 How. 292, 312 [11 L.Ed. 603], and that provision for summary disposition, "without regard to usual modes of trial attended by some necessary delay," is one of the means chosen by Congress to effectuate that purpose. . . .

*Id.* at 328–29, 86 S.Ct. at 472. The Court concluded that the preference action could be tried before the bankruptcy court without a jury, because to require otherwise would be to "dismember" the scheme Congress prescribed for the adjudication of bankruptcy proceedings.

> In neither *Beacon Theatres* [*v. Westover,* 359 S.Ct. 500, 79 S.Ct. 948, 3 L.Ed. 2d 988 (1959)] nor *Dairy Queen* was there involved a specific statutory scheme contemplating the prompt trial of a disputed claim without the intervention of a jury. We think Congress intended the trustee's § 57g objection to be summarily determined; and to say that because the trustee could bring an independent suit against the creditor to recover his voidable preference, he is not entitled to have his statutory objection to the claim tried in the bankruptcy court in the normal manner is to dismember a scheme which Congress has prescribed. *See Alexander v. Hillman,* 296 U.S. 222, 243 [56 S.Ct. 204, 211, 80 L.Ed. 192 (1935)]. Both *Beacon Theatres* and *Dairy Queen* recognize that there might be situations in which the Court could proceed to resolve the equitable claim first even though the results might be dispositive of the issues involved in the legal claim. To implement congressional intent, we think it essential to hold that the bankruptcy court may summarily adjudicate the § 57g objection; and, as we have held above, the power to adjudicate the objection carries with it the power to order surrender of the preference.

*Id.* at 339–40, 86 S.Ct. at 478.

In decisions subsequent to *Katchen,* the Supreme Court has stated clearly that bankruptcy courts are specialized courts of equity and that *Katchen* comes within the line of decisions holding that Congress may authorize such tribunals to adjudicate federal statutory actions without a jury. The Court stated in *Curtis v. Loether* that Congress could "entrust enforcement of statutory rights to an administrative process or *specialized court of equity* free from the strictures of the Seventh Amendment." 415 U.S. at 195, 94 S.Ct. at 1009 (emphasis added). In *Atlas Roofing,* the Court explained that it was referring to bankruptcy courts when using the term "specialized court of equity" in *Curtis.*

The Court had reference to *Katchen v. Landy,* 382 U.S. 323 [86 S.Ct. 467, 15 L.Ed.2d 391] (1966), in which this Court sustained the power of a bankruptcy court, exercising summary jurisdiction

without a jury, to adjudicate the otherwise legal issues of voidable preferences. The Court did so on the ground that a bankruptcy court, exercising its summary jurisdiction, was a specialized court of equity and constituted a forum before which a jury would be out of place and would go far to dismantle the statutory scheme.

430 U.S. at 454 n. 11, 97 S.Ct. at 1268 n. 11.

Defendant contends that the holding of *Katchen* is limited to cases in which the creditor has *consented* to trial of the preference action without a jury by filing a claim against the bankruptcy estate. This argument is unpersuasive. The Court never used the term "consent" in its decision in *Katchen*. The decision is better explained by the theory that Congress may provide that federal statutory rights be adjudicated without a jury by a specialized court of equity, and the Court itself explained *Katchen* in those terms in *Atlas Roofing*. *See* 430 U.S. at 454 n. 11, 97 S.Ct. at 1268 n. 11.

## IV

Through the Bankruptcy Reform Act of 1978 and subsequent amendments, Congress has committed the adjudication of preference actions to the bankruptcy courts as core proceedings. Section 157 of the Judicial Code provides in relevant part:

> (b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
>
> (2) Core proceedings include, but are not limited to—
>
> . . . . .
>
> (F) proceedings to determine, avoid, or recover preferences.

Every court to address the issue has held that preference actions are properly classified as core proceedings, and that bankruptcy courts may enter final judgments in such actions subject only to traditional appellate review. *In re Associated Grocers*

*of Nebraska Co-op*, 62 B.R. 439, 442–47, 14 BCD 945 (D.Neb.1986); *In re Owens*, 69 B.R. 25, 26 (Bankr.E.D.Mo.1986); *In re Washkowiak*, 62 B.R. 884, 885 (Bankr.N.D. Ill.1986); *In re Dunn*, 56 B.R. 275 (Bankr. M.D.La.1985). *Cf. In re Mankin*, 823 F.2d 1296, 1306–09 (9th Cir.1987) (fraudulent conveyance action properly classified as core proceeding where Congressionally created right involved).

## V

In *Atlas Roofing*, the Supreme Court stated that Congress could commit the fact-finding function to an administrative agency only in proceedings involving "public rights." It identified proceedings involving public rights as those in which "the Government is involved in its sovereign capacity under an otherwise valid statute creating enforceable public rights." 430 U.S. at 458, 97 S.Ct. at 1270. I conclude that preference actions may be tried by bankruptcy courts without juries, even though the Government is generally not a party.

First, the Court has not limited proceedings that may be heard by a specialized tribunal without a jury to those in which the Government is a party. The Government was not a party to the preference action in *Katchen*. *See* 382 U.S. at 325, 86 S.Ct. at 470. The Court also upheld a Congressional statute requiring certain landlord-tenant disputes to be tried by an agency sitting without a jury, even though the Government was not a party to those disputes. *See Block v. Hirsh*, 256 U.S. 135, 158, 41 S.Ct. 458, 460, 65 L.Ed. 865 (1921).

Furthermore, the Supreme Court has recently held that cases involving public rights are not limited to those in which the Government is a party, and questioned the continuing validity of the private rights/public rights dichotomy. *See Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 585–89, 105 S.Ct. 3325, 3335–37, 87 L.Ed.2d 409 (1985). The Ninth Circuit recently stated that the public rights doctrine largely identifies proceedings that have traditionally not been tried exclusively in the Article III courts. *See In re Mankin*, 823 F.2d 1296, 1307–08

(9th Cir.1987). Because "it has always been understood that bankruptcy proceedings need not be solely determined by Article III officers," the Ninth Circuit held that any proceeding that Congress has properly classified as a core bankruptcy proceeding is functionally similar to a proceeding involving public rights. *Id.* at 1308. As noted in Part IV, preference actions are properly classified as core bankruptcy proceedings under 28 U.S.C. § 157(b)(2)(F).

Finally, the Supreme Court acknowledged in *Atlas Roofing* that even proceedings involving purely private rights can be assigned to a specialized tribunal sitting without a jury, where that tribunal serves as an adjunct to an Article III court. *Atlas Roofing,* 430 U.S. at 450 n. 7, 97 S.Ct. at 1266 n. 7. The courts have uniformly held that the bankruptcy courts have been properly established as adjuncts to the district courts under the Bankruptcy Amendments and Federal Judgeship Act of 1984. *See, e.g., Mankin,* 823 F.2d at 1305–10; *In re Arnold Print Works, Inc.,* 815 F.2d 165, 166–71 (1st Cir.1987).

## VI

■ The final question to be addressed is whether the parties have a right to jury trial on the bulk transfer action. I conclude that they do not.

Following entry of partial summary judgment in favor of Plaintiff, the sole issue remaining to be determined in the bulk transfer action is the value of the property transferred. The court must also determine this issue in the preference action. As explained above, the bankruptcy court can determine all issues in the preference action without a jury. Assuming the parties would enjoy a right to jury trial in the bulk transfer action if that action were tried alone,[6] under *Katchen* there is no right to jury trial with respect to those issues in the bulk transfer action that are also issues in the preference action.

As noted in Part III, *Katchen* also involved an action in which a single action contained one cause of action that would ordinarily be tried to the bankruptcy court without a jury, and another cause of action arising out of the same transaction that would ordinarily be tried by a jury outside the bankruptcy court. The Court acknowledged that where legal and equitable claims are presented in a single action, the right to jury trial ordinarily must be pre-

---

**6.** The courts have held that the right to jury trial is not affected in noncore proceedings. *See In re Bokum Resources Corp.,* 49 B.R. 854, 867–68, 13 BCD 11, 19–20 (Bankr.D.N.M.1985); *In re Crabtree,* 55 B.R. 130, 132 (Bankr.E.D.Tenn. 1985). Presumably this is because Congress has not accorded the bankruptcy courts power to enter final judgment in noncore proceedings, *see* 28 U.S.C. § 157(c)(1), and Congress thus has not fully committed the adjudication of such proceedings to the bankruptcy court as a specialized court of equity. Furthermore, most noncore proceedings do not involve Congressionally created rights. *See* Carlson, *Distinguishing Core from Noncore Proceedings,* 1985 Norton Bankruptcy Law Adviser No. 1 at 3–4 (hereinafter Core Proceedings Article). Because Congress is not dealing with rights of its own creation, it does not enjoy broad discretion to determine the manner in which those rights will be adjudicated. *Id.* at 2; *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 81–84, 102 S.Ct. 2858, 2876–78, 73 L.Ed.2d 598 (1982).

The Trustee's bulk transfer action may be noncore proceeding because it is a suit by the trustee against a creditor that has not filed a claim against the estate and arises under state law. *See* Core Proceedings Article at 3–4. The Ninth Circuit has held that a trustee's action under a state fraudulent conveyance act is a core proceeding. *In re Mankin,* 823 F.2d 1296 (9th Cir.1987). The court reasoned that Congress had expressly classified all fraudulent conveyance actions as core proceedings in 28 U.S.C. § 157(b)(2)(H), and that the action involved Congressionally created rights in that Congress incorporated state fraudulent conveyance actions into the Bankruptcy Code through 11 U.S.C. § 544 to further federal bankruptcy policy. *Id.* at 1308–09. It is unclear, however, whether the bulk transfer action is a core proceeding under *Mankin.* The action is not labelled a fraudulent conveyance action, although at least some commentators consider bulk transfer actions to be a type of fraudulent conveyance action. *See* J. White & R. Summers, Uniform Commercial Code § 19–1 at 754–58 (1980). It is therefore unclear whether the *Mankin* court would find the bulk transfer action to be a fraudulent conveyance action or otherwise to come within the statutory definition of core proceedings.

It is unnecessary to resolve this question, however, because I conclude that there is no right to jury trial even if the bulk sales action is a noncore proceeding.

served with respect to all issues related to the legal cause of action (the *Dairy Queen* doctrine). *See* 382 U.S. at 338–40, 86 S.Ct. at 477–78. The Court declined to apply the *Dairy Queen* doctrine to proceedings tried in the bankruptcy court, however, and held that any issue arising in a cause of action normally tried in the bankruptcy court could be tried without a jury, even where the bankruptcy court's determination would have a *res judicata* effect on the cause of action normally tried to a jury in another court. *Id.* at 334–35, 86 S.Ct. at 475–76.

Because the only issue in the bulk transfer action must also be determined in the preference action, that issue may be tried without a jury.

CONCLUSION

Because the Trustee's preference action is a federal statutory cause of action, and because Congress has determined it should be adjudicated by the bankruptcy court as a core proceeding, there is no constitutional right to a jury trial in that action under *Atlas Roofing* and other Supreme Court decisions cited herein. Because the Trustee's bulk transfer action raises no factual issues different from those in the preference action, those issues may be tried without a jury in the preference action under *Katchen.* A separate order will be entered striking Defendant's jury demand.