**BAXTER TRAVENOL LABORATORIES, INC., et al., Plaintiffs,**

v.

**William E. LeMAY, et al., Defendants.**

**No. C–3–80–362.**

United States District Court, S. D. Ohio, W. D.

May 20, 1981.

See also, 89 F.R.D. 410.

Jon M. Sebaly, Smith & Schnacke, Dayton, Ohio, for Phoenix Glove.

G. David Schiering, Murray S. Monroe, Cincinnati, Ohio, Roger F. Lewis, Baxter Travenol Laboratories, Inc., Deerfield, Ill., for Baxter Travenol.

Jerome B. Pederson, Minneapolis, Minn., for Dispatch Industries.

1. § 1292. *Interlocutory decisions*

. . . .

   (b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the

### DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR INTERLOCUTORY APPEAL "FINDINGS"

RICE, District Judge.

The captioned cause is before the Court upon Defendants' motion seeking a statement of "findings," with respect to the Court's first *Decision and Entry* of February 19, 1981, 89 F.R.D. 410, in order that immediate appeal of said *Decision* might be taken pursuant to 28 U.S.C. § 1292(b).[1]

Section 1292(b) does not require "findings," but does require a written statement by the district judge that he is "of the opinion" that an otherwise nonappealable order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. . . ."

Defendants have not precisely stated what controlling question of law is involved in the subject *Decision*. Based upon the matters raised in Defendants' memorandum, the Court would suggest that the precise legal question at issue may be framed as follows:

> Whether communications between corporate counsel and an employee of the client corporation, which concern matters that occurred prior to the employee's employment with the corporation (i. e., matters not within the scope of the employee's corporate duties) but which, in all other respects, fall within the analysis of *Upjohn Company v. United States*, —— U.S. ——, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), are subject to compelled disclosure

litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

in discovery through deposition of the employee, despite the attorney-client privilege?

*See Decision and Entry* at 5–7 (answering question in the negative).

The Court does not agree with Defendants' contention that the interpretation of *Upjohn,* and its application to the present case in the subject *Decision,* conflicts with dicta in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1946), concerning the *general* scope of the attorney-client privilege (i. e., its applicability to an attorney's conversation with a witness). However, in view of the conflict between the Circuits regarding the scope of the *corporate* attorney-client privilege prior to *Upjohn* (i. e., its applicability to an attorney's conversation with an employee of the client corporation, who may also happen to be a witness), and in view of the limited illumination which *Upjohn* sheds on *that question,* the Court does agree that *there is substantial ground for difference of opinion on the matter. See Decision and Entry* at 4–5.

Further, the Court is sensitive to Defendants' contentions that the discovery which they seek is essential to their counterclaims, and that, if this Court's decision not to compel disclosure is erroneous, a retrial of the counterclaims (and, perhaps, Plaintiffs' claims) might be avoided by an immediate appeal which corrects such error. Specifically, the Court notes that the Defendant Phoenix has alleged, in the First Claim for Relief in the Counterclaim, that the prosecution of the instant, "meritless" lawsuit is part of a conspiracy or predatory course of conduct undertaken by Plaintiffs to eliminate Phoenix as a viable competitor, in violation of federal antitrust law. (The Court also notes that Phoenix has advocated this particular claim upon the Court at nearly every turn in the litigation since the Complaint was filed. *See Decision & Entry* of October 28, 1980, at 2–6; first Decision & Entry of February 19, 1981, at 8–9; second *Decision & Entry* of February 19, 1981, at 2, 8–9.) Because it appears undisputed that the matters sought by the requested discovery—i. e., the conversations of Plaintiffs' attorney with a "litigation consultant" employee—played a prominent role in Plaintiffs' initiation of this lawsuit, such discovery (foreclosed by the subject *Decision*) might provide crucial information with respect to the counterclaim, either as evidence of Plaintiffs' alleged predatory motives [2] or as evidence of specific conspiratorial acts.[3] By their nature, the discovery of the substance of such *confidential communications* cannot conceivably be obtained elsewhere, and, therefore, discovery of them is essential to proof of these aspects of the counterclaims.

In this sense, the previously stated question [4] may be deemed *"controlling,"* at least under the liberal definition of that term followed in the Third Circuit. *See, e. g., Katz v. Carte Blanche Corp.,* 496 F.2d 747, 755 (3d Cir. 1974) (any decision which, if erroneous, would be grounds for reversal presents a "controlling question"). Moreover, even under the stricter standard followed in the Second Circuit, *Kohn v. Royall, Koegel & Wells,* 59 F.R.D. 515, 525 (S.D.N. Y.1973), this Court is of the opinion that a decision on the significance of the "scope of employment" factor in *Upjohn*—squarely presented by the question to be certified—

---

**2.** Contrary to Plaintiffs' contention, evidence of improper anticompetitive intent in filing this lawsuit *need not come only* from the "executive personnel who authorized the suit." For example, if the requested discovery would show that the "litigation consultant" provided Plaintiffs with no information to support the allegations in the complaint, and, in fact, the employee provided information clearly disproving such allegations, thereby putting Plaintiffs on notice that their lawsuit would be "meritless," then an inference of improper motive in filing the lawsuit might be found.

**3.** E. g., the conversations in themselves, should it be shown that the participants agreed to fabricate evidence in order to prosecute a lawsuit for the purpose of driving Phoenix out of business.

**4.** Contrary to Plaintiffs' contention, the legal issue set forth above, phrased in such narrow fashion, is, strictly speaking, a pure question of law.

might have an impact on a large number of cases involving the corporate attorney-client privilege after *Upjohn.*

Finally, this Court is of the opinion that an "immediate appeal ... may materially advance the ultimate termination of the litigation." This criteria requires not only an assessment of the probability that the Court's decision is in error (i. e., the probability that, without immediate appeal, a time-consuming retrial will be required), but, also, consideration of *the extent to which* additional time and expense may be saved by avoiding a retrial (i. e., the complexity of the case). This litigation is certainly not as simple as the personal injury litigation presented in *Haraburda v. United States Steel Corporation,* 187 F.Supp. 86 (W.D.Mich.1960) (denying section 1292(b) certification for lack of complexity), *cited with approval in Kraus v. Board of County Road Commissioners,* 364 F.2d 919, 921, 922 (6th Cir. 1966),[5] but, on the contrary, appears to be the "extraordinary type of case" which the Sixth Circuit has said is the specific kind of litigation contemplated by section 1292(b). *Wagner v. Burlington Industries, Inc.,* 423 F.2d 1319, 1322 n.5 (6th Cir. 1970). *See also* footnote 5, *supra,* and below, *infra; Cardwell v. Chesapeake & Ohio Rwy.,* 504 F.2d 444, 446 (6th Cir. 1974).

Although it is settled in this Circuit that section 1292(b) must be "strictly construed" in order to avoid "piecemeal appeals," *see Cardwell, supra; Wagner, supra; Kraus, supra,* this Court is of the opinion that each criteria in that statute is satisfied herein.

Defendants' motion, seeking the statement necessary for immediate appeal of the Court's first *Decision and Entry* of February 19, 1981, pursuant to 28 U.S.C. § 1292(b), is, therefore, well taken and sustained. Said *Decision* is hereby amended, as of the date of the present *Decision & Entry,* to include the following statement at page 11:

> "The Court is of the opinion that this Order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from this Order may materially advance the ultimate termination of the litigation."

*See* Fed.R.App.P. 5(a).

At this point, none of the parties, herein, have shown cause for staying pretrial proceedings in this matter pending disposition of the appeal, or application for same, which Defendants will likely pursue. Therefore, the Court will not order a stay of proceedings at the present time. To the extent that the *Decision & Entry* upon which Defendants will be taking the anticipated appeal does foreclose discovery in a limited area (and, thereby, might be said to

---

5. Section 1292(b) was enacted in 1958, following a study by a committee of the Judicial Conference of the United States, and was endorsed by the Judicial Conference. The purpose of this legislation was explained in the report of the committee, of which the late Judge Shackelford Miller, Jr., of this court was a member, as follows:

> "[W]e have given consideration to the action taken by the circuit conferences and have reached the conclusion that provision should be made for the allowance of appeals from the interlocutory orders in those exceptional cases where it is desirable that this be done to avoid unnecessary delay and expense and that the danger of opening the door to groundless appeals and piecemeal litigation can be avoided by proper limitations to be included in the amendatory statute. * * *
>
> Your Committee is of the view that the appeal from interlocutory orders thus provided should and will be used only in exceptional cases where a decision of the appeal may

avoid protracted and expensive litigation, *as in antitrust and similar protracted cases,* where a question which would be dispositive of the litigation is raised and there is serious doubt as to how it should be decided, as in the recent case of *Austrian v. Williams* (2 Cir. 198 F.2d 697). It is not thought that district judges would grant the certificate in ordinary litigation which could otherwise be promptly disposed of *or that mere question as to the correctness of the ruling would prompt the granting of the certificate.* The right of appeal given by the amendatory statute is limited both by the requirement of the certificate of the trial judge, who is familiar with the litigation and will not be disposed to countenance dilatory tactics, and by the resting of final discretion in the matter in the court of appeals, which will not permit its docket to be crowded with piecemeal or minor litigation."

*Id.* at 921 (emphasis added).

**1160**

have the effect of a "limited stay"), said *Decision* will remain in full force and effect until and unless contrary direction is provided by the Court of Appeals.

This Court orders, in view of its declination to order a stay of proceedings, that pre-trial discovery, in all areas *not* covered by the certified question, continue in uninterrupted fashion during the time of the appeal of the certified question set forth, *supra*, at 1157–1158.

If, during the pendency of the anticipated appeal, any party has substantial reason to believe that certain requested discovery will prove unnecessary or duplicative should this Court's decision on the certified question be reversed (e. g., if a proposed disposition would have to be onerously continued after reversal in order to cover matters presently foreclosed from inquiry), then such party shall immediately notify the Court of the specific nature of the problem and seek appropriate protection.